# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re: <br><br> MICHAEL J. ROBERTS, SR., <br><br> Debtor(s). | Case No. 22-10521-JGR <br><br> Chapter 11 case Converted to Chapter 7 |

## DEBTOR'S OBJECTION TO CLAIM OF PdC LLC (Proof of Claim 16 )

The Debtor, Michael Joseph Roberts, Sr., ("Roberts" or "Debtor") and objects to the claim of PdC, LLC (Claim 16) Pursuant to Fed. R. Bankr. P. 3007, as follows:

1. This Court has jurisdiction over this objection pursuant to 28 U.S.C. 1334.

2. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (B)

3. Creditor Timothy Kneen ("Kneen") together with Timothy Flaherty ("Flaherty") created a venture to develop beach front villas in Mexico in 2007.

4. Debtor was the largest investor/lender in the project.

5. Kneen and Flaherty (together sometimes herein referred to as "Promoters") formed PdC LLC ("PdC") as the investment vehicle.

6. PdC is a Colorado limited liability company. Mexico's Constitution prohibits foreign companies from owning certain beachfront property in the "restricted zone." PdC therefore formed Riviera Country Club S. De R.L. de C.V. ("RCC"), a Mexican entity, to own the lands purchased in Mexico and pursue the development.

7. PdC and PdC II (an additional entity created to satisfy the laws of foreign ownership in Mexican property) are the sole owners of RCC.

8. PdC filed a proof of claim number 16 on April 29, 2022. PdC claims an indebtedness as litigated in the Denver District Court. The only claim litigated in the Denver action was the claim of RCC for usurping RCC's corporate opportunity.

9. PdC has no direct claim against Debtor, and hasn't attempted to assert one.

10. PdC in its Proof of Claim asserts no indebtedness owing to it from Debtor. *See* Claim 16.

11. PdC wrote four pages of narrative without alleging a single claim against Debtor.

12. Instead, PdC describes various orders of the Denver Court, the first where the Court purported to find liability in a trial on the issue of corporate governance that Roberts was not permitted to attend.

13. A finding of liability without offering a party notice of the liability trial and without providing a meaningful opportunity to attend and be heard deprives a litigant of his due process rights. *See, Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164, 71 S. Ct. 624, 644 (1951) (Notice and the opportunity to be heard "are prerequisite to due process in civil proceedings"); and *Feeney v. Colo. Ltd. Gaming Control Comm'n*, 890 P.2d 173, 174 (Colo. App. 1994).

14. Where a Court provides the parties with notice that a hearing will be limited to certain issues, it violates the parties' due process rights where it subsequently determines issues beyond the scope of that notice. *Dupont v. Southern Nat'l Bank of Houston, Inc.*, 771 F.2d 874 (5th Cir. 1985).

15. In its Proof of Claim PdC then described the order striking Roberts' claims and defenses based upon the false application of PdC which alleged that Roberts had produced only 14 documents in discovery, when PdC was in possession of over a thousand documents produced by Roberts through counsel.

16. No claim is made against Debtor based upon the improvident order of the Denver Court striking Roberts claims and defenses, another deprivation of due process.

17. In its Proof of Claim, PdC then described the void order for a writ of attachment (void because it was issued based upon an affidavit made on information and belief)[1] based upon the false allegation that Roberts was moving his family and assets to Poland.

18. No claim is made against Debtor based upon the resulting order of the Denver Court freezing Debtor's assets, which was beyond the jurisdiction of the Court.

19. Finally, PdC described the damage hearing conducted by the Denver Court in which the Court ignored the undisputed evidence that RCC had no equity in its properties and further ignored that PdC is indebted to Roberts.

20. Not one word in the description of PdC's claim describes any claim of PdC against Roberts.

21. Instead, PdC attempts to assert the claim of RCC here and in the Denver Action.

22. The sole claim for which liability was imposed in the Denver action was the breach of a fiduciary duty for usurping a corporate opportunity belonging to RCC.

23. That claim belongs to RCC. It does not belong to its shareholders. *See*, *Durdin v. Cheyenne Mount. Bank*, 98 P.3d 899,902 (Colo. Ct. App. 2004).

24. A shareholder only has a claim against a debtor of the corporation if the shareholder has a loss which is distinct and different from the losses of all shareholders. *See, Kim v. Grover C.*

---

[1] In 1975, Rule 102 was revised to require that the affidavit set forth specific facts supporting the grounds of attachment. *Inwood Indus., Inc. v. Priestley*, 37 Colo. App. 78, 545 P.2d 732 (1975), aff'd, 191 Colo. 543, 560 P.2d 822 (1976). This requirement is not satisfied by allegations on information and belief. *Colo. Vanadium Corp. v. Western Colo. Power Co.*, 73 Colo. 24, 213 P. 122 (1924). The requirement of an Affidavit is jurisdictional. *Markle v. Dearmin*, 184 P.2d 495 (Colo. 1947). Any failure to conform to prescribed procedures is fatal and the writ has no validity. *Jayne v. Peck*, 395 P.2d 603, 604 (Colo. 1964).

*Coors Trust*, 179 P.3d 86, 89-90 (Colo.App.2007). Otherwise, a claim must be asserted as a derivative claim pursuant to C.R.C.P. 23. *Buechner v. Rouse*, 538 P.2d 117, 120 (Colo. Ct. App. 1975).

25. PdC never alleged a derivative claim in the Denver Court and does not do so here. *See* Claim 16.

26. Although the Denver Court entered an order awarding judgment to PdC, the order is interlocutory, has not been appealed, and was mistakenly entered for PdC which has no claim against Roberts. The order of the Denver Court is not final and may be the subject of post trial proceedings before it would be final.

27. Jurisdiction of RCC's claims were exclusively vested in the Courts of Mexico. *See* Affidavit of David Lopez, attached hereto as Exhibit F. ("As Mexican law requires, RCC's Articles of Incorporation (Acta Constitutiva) state that its foreign shareholders (PdC and PdC II) are to be considered as Mexican nationals, subject themselves to Mexican law and the jurisdiction of Mexican courts and relinquish their right to invoke the laws of their home country and its jurisdiction.")

28. Otherwise, RCC could not have purchased Mexican beach front property. *See Brady v. Brown*, 51 F3d 810, 816-817 (9th Cir. 1995) ("Article 27, Section I of the Mexican Constitution provided: "Under no circumstances may foreigners acquire direct ownership of lands or waters within a zone of . . . fifty kilometers along the shores of the country.")

29. *See also Wong v. Tenneco*, 39 Cal 3d 126, 134 (Cal. 1985):

> Since 1917, Mexico's Constitution has expressly prohibited alien ownership or control of Mexico's land or waters. This restriction represents that country's abiding commitment to the preservation and management of scarce resources for the benefit of the Mexican people, a commitment fostered by a sobering history of exploitation of the land, and its people, by foreign interests.

> Mexico's statutory law governing foreign investment contains ownership limitations similar to those expressed in its Constitution. However, neither the Constitution nor the statute wholly preclude foreign investment in Mexico's resources. Foreigners who agree to respect the autonomy and ultimate authority of the Mexican government may acquire ownership interests in many of the country's natural resources.

.

30. All disputes involving not only RCC as a Mexican national but also involving its shareholders, PdC and PdC II, are exclusively committed to the Courts of Mexico as they involve RCC.

31. PdC cannot bring its claims that a lien upon Mexican real property was wrongfully acquired other than in the Courts of Mexico. The Colorado Court lacked subject matter jurisdiction to determine the proper owner of the Mexican lien.

32. Further, PdC cannot pursue the claims of RCC because RCC litigated its claims against Roberts in the Courts of Mexico and Roberts prevailed.

33. Any claims brought by RCC against Roberts in the United States would be barred by Res Judicata. *See In re Marriage of Seewald*, 22 P.3d 580, 583 (Colo.App. 2001).

34. Res Judicata bars not only the issues actually litigated but also any issues which might have been raised in the prior proceedings. *See Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999).

35. PdC, Kneen and Flaherty are in privity with RCC and their claims are barred by res judicata as well. *See Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999).

36. RCC could not have brought claims against Roberts in the Denver Court because its claims were barred.

37. Even if PdC were permitted to assert the barred claim of RCC for breach of fiduciary duty for usurping a corporate opportunity of RCC, PdC suffered no damages because RCC had no equity in its properties.

5

38. RCC's project debt greatly exceeded the value of its properties.

39. Even if Roberts had usurped a corporate opportunity, it caused no damages because RCC had no equity in the Mustapha Parcels. RCC would have received nothing from their sale.

40. In December 2016, after two years of trying, RCC was unable to sell its three properties.

41. The largest expression of interest the Promoters could muster in December 2016 was $15 million for the 3 RCC properties and the adjacent beach house owned by Roberts, Kneen and Flaherty through a different entity.

42. On December 2, 2016, Promoters circulated an e-mail to the project lenders with the 5 purchase options it had developed and announced a meeting on December 13, 2016, to choose one of them. The highest offer was $15 million. *See* Promoters' E-mail to Lenders, Exhibit A attached hereto.

43. Due to the overwhelming debt of the project, a $15 million dollar sale would have returned nothing to PdC or its investors. *See* Promoters Capital Stack, Exhibit B attached hereto.

44. The Promoters' capital stack omitted to mention the interest due on the PdC loans which in 2016 exceeded $10 million. It was omitted because a sale of the RCC properties would not even repay the principal of the loans and no payment could be made for the interest.

45. In December 2016, PdC and RCC had more than $26 million of project debt. With the $5.5 million Hotusa debt, the project had more than $31 million of debt.

46. A $15 million sale would have been insufficient to repay project debt. RCC and PdC would have received nothing from a sale.

47. RCC suffered no damages because it had no equity in the properties.

48. A plaintiff with no equity interest in real property cannot recover damages for the loss of that property. *See, Jones v. Wells Fargo Bank, N.A.*, Civil Action No. 13-cv-02210-MSK-

KLM7, 2014 U.S. Dist. LEXIS 110560, at *35 (D. Colo. July 1, 2014) (citing Restatement (Second) of Torts § 901 cmt. a) (declining to award damages where party had no equity in underlying property as doing so would "do much more than place Plaintiff in a position 'equivalent to his position prior to the tort.'").[2]

49. Likewise, PdC as the shareholder of RCC, had no expectation of profit or distribution from the sale due to the overwhelming amount of project debt.

50. PdC suffered no damages because RCC had no equity in the properties.

51. PdC falsely represented to this Court that its claim was not duplicative of the claims of any other creditors. *See* Proof of Claim 16. In fact, PdC's claim is the same as the claims of RCC, Kneen and Flaherty.

52. PdC falsely represented to this Court that it is a secured creditor. (Claim 20.)

53. PdC claims a lien on Debtor's assets due to an alleged prepetition Writ of Attachment.

54. No such Writ was ever issued, acted on by the Sheriff or levied.

55. It is not the writ, but the levy of the writ by the actual seizure of the property, which constitutes the attachment." *Crisman v. Dorsey*, 21 P. 920, 924 (Colo. 1889). Execution of the writ serves as a lien on specified property. *Bernhardt v. Commodity Option Co.*, 528 P.2d 919, 921 (Colo. 1974).

56. PdC is not a secured creditor.

---

[2] *See also Hooper v. Musolino,* 234 Va. 558, 570, 364 S.E.2d 207, 213 (1988) ("Because the partnership had no equity in the property, it lost nothing in the foreclosure. Accordingly, we will reverse that portion of the decree that awarded the partnership damages for the unencumbered value of parcel A."); *St Paul at Chase Corp v Manufacturers Life Ins Co*, 262 Md. 192, 241-244; 278 A.2d 12 (1971) (breaching party's refusal to finance entitled property owner to recover for loss of equity, but because owner had no equity it could recover no damages for loss of building)

57. PdC also falsely represented to this Court that the claim was not subject to set off. *See,* Proof of Claim 16.

58. Even if PdC were damaged from the assignment of the Hotusa lien to Roberts, any damages it suffered would be subject to setoff.

59. Roberts loaned $1,350,000 to PdC for the project in 2012 and 2013 at 15% per annum, compounded quarterly. *See,* Promoters' Loan Calculations, Exhibit C attached hereto.

60. Rm Funding loaned $6,706,000 to PdC for the project in 2012 pursuant to Loan Agreement and Promissory Note. *See* Exhibits D and E, attached hereto.

61. Roberts loaned $3,350,000 to RM Funding for the loan to PdC. *See* Exhibit C. The loan from Roberts represented 49.95% of the RM Funding loan to PdC. The RM Funding loan also accrued interest at 15% per annum, compounded quarterly. *Id.*

62. The Promoters recognized that a portion of the RM Funding loan was owed to Roberts. *Id.*

63. In August 2014, PdC owed more than $20 million on its loans. *Id.* PdC owed Roberts $7,601,779. *Id.*

64. RCC and PdC made no payments on the loan from Roberts or on the RM Funding loan, and by December 2016, Roberts was owed $8,470,470 on his portion of the RM Funding loan and on his loan to PdC.

65. Even if PdC sustained a loss from the transfer of the lien on the Mustapha Parcels[3]

---

[3] The alleged breach of fiduciary duty in the Denver Action involved Roberts' purchase of an assignment of the lien of Hotusa encumbering the Mustapha Parcels, two of the beachfront properties acquired by RCC. Although Promoters allege that after two years of failed attempts to sell the properties of RCC and after continuously refusing to fund additional money to RCC, Flaherty was prepared to loan $5.5 million to RCC to retire the Hotusa lien. However, Roberts merely had an assignment of the lien which could still be retired by RCC. Flaherty made no loan and RCC has not to this day made any attempt to repay Roberts or retire the Hotusa lien.

to Roberts, the losses would have been subject to a set off for the amounts PdC owed to Roberts in the amount of $8,470,470.

66. In its Proof of Claim, PdC did not aver that it was damaged by the assignment of the Hotusa lien.

67. Rather, PdC attached 22 pages of a damage chart to its Proof of Claim.

68. PdC filed this chart in the Denver Court alleging 11 items of damage, most of which were ignored by the Denver Court because they bore no relation to damages for the claim of breach of fiduciary duty for usurping the corporate opportunity to repay Hotusa.

69. In the damage chart, PdC alleged that it was entitled to recover the payments made to Hotusa pursuant to the Settlement Agreement before the final payment made by Roberts. The claim of damage is duplicative of the claim for the loss of the Mustapha Parcels.

70. A party can have but one recovery. They cannot be awarded duplicative damages. *See Schuessler v. Wolter*, 310 P.3d 151 (Colo. App. 2012) *and Lexton-Ancira Real Estate Fund v. Heller*, 826 P.2d 819 (Colo. 1992).

71. The claim for payments RCC made to Hotusa was ignored by the Denver Court.

72. PdC's chart next alleged that it was entitled to collect additional fines for contempt. However, the contempt order was wrongfully entered as it was based upon the fabrication that Roberts was continuing to foreclose in Mexico. In fact, it was RCC that was continuing to litigate in Mexico and Roberts merely responded to a brief filed by RCC. The Denver Court ignored this claim.

73. PdC's chart next alleged damage from the loss of value of the first parcel purchased by RCC in 2008. However, this parcel was unencumbered by the Hotusa lien and could have been sold at any time. In fact, RCC did secretly sell it in 2021. The Denver Court awarded $1,700,000 on this claim.

74. PdC's chart next alleged that it lost the entire value of the Mustapha Parcels even though it didn't own them and RCC had no equity in them. The Denver Court awarded $6,700,000 on this claim, but RCC suffered no loss and PdC would have received nothing from a sale.

75. It was error to award the unencumbered value of the Mustapha Parcels which would place a plaintiff in a better position rather than award an amount to compensate a plaintiff for its losses. *See Jones v. Wells Fargo Bank, N.A.*, Civil Action No. 13-cv-02210-MSK-KLM7, 2014 U.S. Dist. LEXIS 110560, at *35 (D. Colo. July 1, 2014).

76. PdC's chart next alleged the lost value of the beach house. However, this parcel was unencumbered by the Hotusa lien and could have been sold at any time. The Denver Court ignored this claim.

77. PdC's chart next alleged the losses from maintaining all four properties after January 1, 2017. The losses after January 2017 were inconsistent with PdC's date of loss. Having recovered the full value of the properties as of December 2016 it could not recover additional amounts for maintaining them thereafter. The Denver Court awarded $1,458,201 for this claim.

78. PdC's chart next alleged additional costs to maintain the beach house which was not owned by RCC and not encumbered by the Hotusa lien. The Denver Court ignored this claim.

79. PdC's chart next attempted to recover $597,831.83 awarded as costs and damages to Roberts in the Mexican litigation. There is no legal theory to justify this claim as an element of damage. The Denver Court awarded $597,831.83 on this claim. However, since Debtor has not collected any such amounts, it is not a proper element of damages.

80. PdC's chart next alleged exemplary damages. The Denver Court awarded $5.5 million in exemplary damages, which award is beyond the jurisdiction of the Court if PdC has no actual damage. Purchasing a lien on corporate property does not justify an award of exemplary damages where the corporation would not and could not repay the lien.

81. PdC's chart also requested an award of attorney's fees. No legal theory supports an award of attorney's fees for litigation involving the usurpation of a corporate opportunity.

82. PdC's chart also requested a constructive trust. This claim is duplicative of the claim for damages for usurping a corporate opportunity. RCC had to elect between rescission and damages. PdC elected damages and received an order finding liability on that claim. No claim was made to rescind the sale and recover the Hotusa lien to foreclose on the Mustapha Parcels, which would have included its profits. The Denver Court ignored this claim.

83. PdC has no claim of its own against the Debtor, and hasn't attempted to assert one.

84. No indebtedness is alleged in contract, tort or statute.

85. PdC only refers to the interlocutory order of the Denver Court.

86. The Orders of the Denver Court found liability against the Debtor for usurping the corporate opportunity of RCC.

87. That claim belonged to RCC, who litigated its claims against the Debtor in the Courts of Mexico and lost.

88. The claim of RCC and the claim of PdC which is in privity with RCC are barred by res judicata.

89. PdC cannot assert the claim of RCC since PdC is only a shareholder of RCC and has no direct claim against the Debtor.

90. RCC had no equity in the Mustapha Parcels. Project debt exceeds the value of RCC's properties.

91. RCC suffered no damages from the actions of the Debtor.

92. PdC suffered no damages from the actions of the Debtor.

93. Any claim of PdC against the Debtor is subject to set off for the loans made to PdC by the Debtor for the project.

94. The claim of PdC must be denied. PdC has not shown that the Debtor is liable to PdC.

Respectfully submitted,

Podoll & Podoll, P.C.

By: *Robert C. Podoll*
    Robert C. Podoll

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2023, a true and correct copy of the foregoing was electronically filed with the Court and served via CM/ECF pursuant to L.B.R. 9013-1 and 9036-1, to all counsel of record.

    */s/ Robert C. Podoll*